UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BERNARDINE GALVEZ,                      :
                                        :    05 CIV. 2365 (DLC)
                     Plaintiff,         :
                                        :    OPINION AND ORDER
          -v-                           :
                                        :
THE NEW YORK MORTGAGE COMPANY, LLC      :
                                        :
                     Defendant.         :
----------------------------------------X

Appearances:

For plaintiff pro se:
Bernardine Galvez
11 Croydon Road
Amityville, New York 11701

For defendant:
Laurent S. Drogin
470 Park Avenue South, 14th Floor
New York, New York 10016


DENISE COTE, District Judge:

     Pro se plaintiff Bernardine Galvez ("Galvez") brings this
action alleging that her former employer, the New York Mortgage
Company, LLC ("NYMC"), violated Title VII of the Civil Rights Act
of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), by creating unequal
terms and conditions of her employment, retaliating against her
for complaining that she was discriminated against because of her
race, terminating her employment, and fostering an "adverse work
environment."  On June 29, 2005, NYMC moved to dismiss the claims
against it pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the
grounds that plaintiff has failed to state a claim upon which
relief can be granted.  For the reasons stated below, NYMC's
motion is denied, and Galvez will be afforded an opportunity to
amend her pleading.

<u>Facts</u>

The following facts are taken from Galvez's complaint.[1] Galvez, who is African-American, was employed at NYMC as a title reviewer from March 31, 2003 through August 25, 2004. The complaint describes workplace disputes that arose during the summer of 2004, and the unsuccessful efforts of management to address these disputes.

On June 18, 2004, Galvez sent an e-mail to Elyse Sullivan, NYMC's vice president of operations, regarding the failure of two NYMC employees, Karen Russell ("Russell"), NYMC's director of human resources, and Jason Madfes ("Madfes"), Galvez's immediate supervisor and NYMC's vice president of the settlement department, to perform their job duties "with regards to the Evaluation/Vacation Policy issue." Approximately one month later, on July 22, Galvez filed a complaint with NYMC which she describes as alleging that Robert Diodato ("Diodato"), the director of sub-prime mortgages, and Russell had unlawfully discriminated against her on the basis of her race. Galvez explains that she complained to NYMC that Diodato had responded to her inquiries about her job duties in an "abusive" and "belittling" matter, creating an "adverse work environment" for her. Galvez further complained that when she approached Russell on July 21 to complain about Diodato's treatment of her, Russell provided "differential

---

[1] Given that a complaint includes "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents, that although not incorporated by reference, are integral to the complaint," <u>Sira v. Morton</u>, 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted), Galvez's January 2005 letter to the EEOC, which was attached to her complaint, serves as a legitimate source for the facts detailed herein.

treatment" to Diodato, who is white, and conducted her interview of Galvez in a manner that evinced Russell's prejudgment of the situation.

The afternoon of July 22, Galvez attended a meeting with the chief executive officer of NYMC, Robert Schnall ("Schnall"), and Joe Fierro, NYMC's chief operating officer.  At that meeting, Schnall and Fierro "tried everything in their means" to deter Galvez from filing a complaint with the EEOC.  Schnall also gave Galvez a "veiled threat" about her need to make friends at NYMC. When Schnall's attempts to dissuade Galvez failed, Schnall sent Galvez an e-mail on July 27 in which he provided his findings. Galvez does not relate what Schnall's findings were.  She does assert, however, that by failing to conduct an investigation of her complaint and "condon[ing] the actions/behavior" of Diodato and Russell, Schnall created an "adverse work environment" and allowed other employees to retaliate against her.

On August 17, Galvez sent an e-mail to Madfes "with regards to his misrepresentations and failure to perform his job duties." Galvez also sent an e-mail, the contents of which she does not detail, to both Madfes and Russell on August 20.  Madfes replied through his own e-mail of August 20 in which he "ridicule[d]" and "disparage[d]" Galvez's work as a title reviewer.  He also explained through a second e-mail later that day that his motivation for the first was to prevent another incident like that which occurred between Diodato and Galvez.  Galvez charges that these e-mails were part of Madfes's continued retaliatory actions toward her regarding the "evaluation/raise and vacation process." Galvez submitted a related complaint to Sara Adriano, a human

resources assistant at NYMC, on August 20.  For his part, Madfes filed a charge of insubordination against Galvez on August 20, and as a result, Galvez attended another meeting with Schnall, during which he did not observe an open-door policy despite having done so in discussing her complaint against Diodato and Russell.

On the morning of August 25, 2004, Galvez "handed personally" a complaint regarding Madres's retaliatory actions toward her to Russell.  That afternoon, in the presence of an "African-American observer," Russell advised Galvez that her position had been eliminated.  When Galvez pressed Russell for an explanation, Russell stated that Galvez was an at-will employee.

Galvez filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2004, and promptly received "an initial decision" four days later on December 15. Galvez represents that she appealed this decision to the EEOC on January 10, 2005.  The EEOC issued a right-to-sue letter on January 25, and Galvez filed the instant action on February 24.

<u>Discussion</u>

‎‎‎‎‎‎Rule 8(a) requires that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a), Fed. R. Civ. P.  Pleadings are to give "fair notice" of a claim and "the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case.  <u>Dura Pharm., Inc. v. Broudo</u>, 125 S. Ct. 1627, 1634, 544 U.S. ___ (2005) (citation omitted); see also <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 512

(2002).  Rule 8 is "not meant to impose a great burden upon a plaintiff." Broudo, 127 S. Ct. at 1634.  Indeed, because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required." Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted).  With respect to complaints of employment discrimination, such pleadings need not "contain specific facts establishing a prima facie case of discrimination" in order to survive a motion to dismiss. Swierkiewicz, 534 U.S. at 508 (citation omitted).

To dismiss an action pursuant to Rule 12(b)(6), a court must determine that "it appears beyond doubt . . . that the plaintiff can prove no set of facts which would entitle him to relief." Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 214 (2d Cir. 2003) (citation omitted).  "It is well-established that when a plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." Hemphill, 380 F.3d at 687 (citation omitted).  A complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Thompson v. Carter, 284 F.3d 411 (2d Cir. 2002) (citation omitted).  If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. Swierkiewicz, 534 U.S. at 514.

I.   Disparate Treatment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise <u>to discriminate against any individual</u> with respect to his compensation, terms, conditions, or privileges of employment, <u>because of such individual's race</u>, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (emphasis supplied).  Claims of employment discrimination brought pursuant to Title VII are analyzed under the burden-shifting approach set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973).  A plaintiff bears the initial burden of establishing a prima facie case of discrimination.  <u>Williams v. R.H. Donnelly Corp.</u>, 368 F.3d 123, 126 (2d Cir. 2004).  "To meet this burden, a plaintiff must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination."  <u>Collins v. New York City Transit Auth.</u>, 305 F.3d 113, 118 (2d Cir. 2002).  An adverse employment action is one that effects a "materially adverse change in the terms and conditions of employment."  <u>Sanders v. New York City Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted).  Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities."  <u>Id.</u> (citation omitted).

Although claims of employment discrimination brought pursuant to Title VII are analyzed under the burden-shifting approach

established in <u>McDonnell Douglas</u>, 411 U.S. at 802-03, in
<u>Swierkiewicz</u>, the Supreme Court stressed that the prima facie case
laid out in <u>McDonnell Douglas</u> "is an evidentiary standard, not a
pleading requirement."  <u>Swierkiewicz</u>, 534 U.S. at 510.  Concluding
that an "employment discrimination plaintiff need not plead a
prima facie case of discrimination," <u>id.</u> at 515, the <u>Swierkiewicz</u>
Court observed that to hold otherwise not only would "narrowly
constrict the role of the pleadings," but also would be
inappropriate in certain cases, such as where a plaintiff,
following discovery, may "produce direct evidence of
discrimination."  <u>Id.</u> at 511 (citation omitted).  Additionally,
the Court explained that to require more from an employment
discrimination complaint than that it "give the defendant fair
notice of what the plaintiff's claim is and the grounds upon which
it rests" would thwart the plain meaning of Rule 8.  <u>Id.</u> at 512
(citation omitted).  The <u>Swierkiewicz</u> Court then concluded that
the plaintiff's complaint, which alleged employment discrimination
on the basis of national origin and age, had given the defendants
"fair notice of the basis for [his] claims" at least in part
because his complaint "included the ages and nationalities of at
least some of the relevant persons involved with his termination."
<u>Swierkiewicz</u>, 534 U.S. at 514.

     NYMC argues that Galvez's claim of race discrimination must
be dismissed as a result of her failure to establish a prima facie
case of discrimination under <u>McDonnell Douglas</u>.  Specifically,
NYMC contends that Galvez does not satisfy the fourth element of
the prima facie case as she "fails to present any allegations from
which it is suggested or can even be inferred that she was treated

differently from any similarly situated non-African-American
employee."  NYMC's insistence that Galvez must state a prima facie
claim of race discrimination to survive a motion to dismiss must
be rejected in light of <u>Swierkiewicz</u>, which clearly provides that
a plaintiff alleging a claim of employment discrimination need do
nothing more than furnish "fair notice" of her claim and "the
grounds upon which it rests."

   Citing <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210 (2d Cir.
2004), NYMC argues further argues that Title VII does not function
as a "general civility code," <u>id.</u> at 223 (citation omitted), and
that Galvez's allegations reduce to "garden-variety" workplace
grievances, such as disrespectful treatment by others and
management's inadequate responses to her grievances.  This
argument is well-founded.  It is not clear what adverse employment
action or actions serve as the basis for Galvez's race
discrimination claim and therefore whether she has given fair
notice in her complaint of the grounds upon which her claim that
those actions were discriminatory rests.  Galvez will be given an
opportunity to amend her complaint.


II.  Retaliation

   Title VII forbids discrimination against an applicant for
employment "because [s]he has opposed any practice made an
unlawful employment practice . . . or because [s]he has made a
charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under" the auspices of that
statute.  42 U.S.C. § 2000e-3(a).  For a plaintiff's conduct to
constitute participation in a protected activity, it is enough

that he has made "informal protests of discrimination, including making complaints to management." <u>Gregory v. Daly</u>, 243 F.3d 687, 700-01 (2d Cir. 2001) (citation omitted). Moreover, "an employment practice need not actually violate Title VII for the protected activities element of a retaliation claim to be satisfied. The plaintiff is only required to have had a <u>good faith, reasonable belief</u> that he was opposing an employment practice made unlawful by Title VII." <u>McMenemy</u>, 241 F.3d at 285 (emphasis supplied.) Whether a plaintiff's belief is reasonable must be "assessed in light of the totality of the circumstances." <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 292 (2d Cir. 1998).

NYMC asserts that Galvez's retaliation claim should be dismissed because she cannot establish a prima facie case of retaliation. Again, NYMC misunderstands the law. In her complaint, Galvez is not required to set forth a prima facie case of retaliation but must simply supply NYMC with fair notice of her claim and the grounds upon which they rest. Galvez has fulfilled this obligation by alleging that she filed an internal complaint against Russell and Diodato on July 22, 2004 for unlawfully discriminating against her on the basis of race and by noting that Russell terminated her employment approximately one month later.

NYMC also contends that Galvez's retaliation claim must be dismissed because Galvez's "internal complaint failed to advise NYMC that she believed that she was the victim of race discrimination" and that Galvez did not even mention race as a factor in her treatment by NYMC "until she filed her EEOC charge." NYMC's argument is directly contradicted, however, by Galvez's

complaint, which states that her June 22, 2004 complaint against
Russell and Diodato accused both of them of discriminating against
her on the basis of race.  Because on a motion to dismiss pursuant
to Rule 12(b)(6), Fed. R. Civ. P., plaintiff's factual allegations
are presumed to be true, NYMC's contrary description of the facts
cannot serve as a basis for dismissal.  As a result, NYMC's motion
to dismiss Galvez's retaliation claim is denied.


III. Hostile Work Environment

     Although NYMC does not separately analyze whether Galvez's
complaint states a hostile work environment claim under Title VII,
a court must construe a pro se plaintiff's civil rights liberally.
Unlike claims of discrimination based on disparate treatment or
retaliation, a hostile work environment claim is "based on the
cumulative effect of individual acts."  Nat'l R.R. Passenger Corp.
v. Morgan, 536 U.S. 101, 115 (2002).  Title VII is violated "when
the workplace is permeated with discriminatory intimidation,
ridicule, and insult, that is sufficiently severe or pervasive to
alter the conditions of the victim's employment and create an
abusive working environment."  Id. at 116 (citation omitted).

     Hostile work environment claims must meet both an objective
and a subjective standard.  Not only must the victim herself
"subjectively perceive [the] environment to be abusive," but the
misconduct of which a plaintiff complains also must be "severe or
pervasive enough to create an objectively hostile or abusive work
environment."  Petrosino, 385 F.3d at 221 (citation omitted).  As
a general matter, the conduct of which a plaintiff complains "must
be sufficiently continuous and concerted in order to be deemed

pervasive." <u>Feingold v. New York</u>, 366 F.3d 138, 150 (2d Cir. 2004).   "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002).

Although Galvez's complaint repeatedly employs the phrases "adverse work environment" and "hostile work environment," she has not given NYMC fair notice of the grounds upon which such a claim rests.   She has not described any act which was sufficiently severe to create a hostile work environment by itself.   Therefore, it appears that she is contending that she was subjected to hostile treatment on a sufficiently continuous basis for it to be considered pervasive.   Because leave to amend will be "freely given when justice so requires," Rule 15, Fed. R. Civ. P., especially as concerns <u>pro se</u> plaintiffs, <u>see</u> <u>Davis v. Goord</u>, 320 F.3d 346, 352 (2d Cir. 2003), Galvez will be permitted to amend her complaint to state a hostile work environment claim.

As mentioned above, NYMC does not specifically address whether Galvez's complaint states a hostile work environment claim.   NYMC generally charges, however, that Galvez should not be granted leave to amend her complaint on the ground that such an amendment would be futile.   More concretely, NYMC argues that a <u>pro se</u> plaintiff alleging a violation of Title VII differs from her counterpart in "ordinary litigation" due to the number of opportunities afforded her to "present her evidence and theories to the administrative agency that was empowered to investigate and resolve her claims."   According to NYMC, Galvez's pursuit of her claims through the EEOC, where they were summarily dismissed,

demonstrates the futility of allowing her an opportunity to replead.

Although "it is not an abuse of discretion to deny leave to amend" if it appears that granting such leave to amend is "unlikely to be productive," <u>Lucente v. Int'l Bus. Mach. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted), there is no support for denying a plaintiff leave to amend merely because her earlier submissions to an administrative body were rejected. Consequently, while Galvez has not sufficiently stated a hostile work environment claim, she will be granted leave to amend her complaint to state such a claim.

Conclusion

For the reasons stated above, NYMC's motion to dismiss Galvez's complaint is denied.  Galvez will be granted leave to amend her complaint to state her disparate treatment and hostile work environment claims.  Galvez must submit her amended pleading by September 30, 2005.


SO ORDERED:

Dated:    New York, New York
          September 1, 2005


                              _____
                              DENISE COTE
                              United States District Judge